511fels

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                            13-CR-390 (JFK)

RAUL FELIX,

            Defendant.            Sentencing

------------------------------x

                                      New York, N.Y.
                                      May 1, 2014
                                      11:03 a.m.

Before:

                  HON. JOHN F. KEENAN,

                                      District Judge

                      APPEARANCES

PREET BHARARA
    United States Attorney for the
    Southern District of New York
BY:  SANTOSH ARAVIND, ESQ.
    Assistant United States Attorney

MIEDEL & MYSLIWIEC LLP
    Attorneys for Defendant
BY:  FLORIAN MIEDEL, ESQ.

511fels

1              (In open court)
2              THE COURT:  What we have now is the United States v.
3   Raul Felix for sentence.  And Mr. Miedel is here with
4   Mr. Felix, and Mr. Aravind is here for the government.
5              And are you ready for sentence, Mr. Miedel?
6              MR. MIEDEL:  Yes, your Honor.
7              THE COURT:  All right.  And have you any objections to
8   the probation report?
9              MR. MIEDEL:  No objections.
10             THE COURT:  Okay.  And have you gone over the report
11  yourself and have you gone over it with Mr. Felix?
12             MR. MIEDEL:  Yes, I have, your Honor.
13             THE COURT:  And he's read it, is that right?
14             MR. MIEDEL:  I'm sorry?
15             THE COURT:  He has read it, is that true?
16             MR. MIEDEL:  Yes, yes.
17             THE COURT:  All right.  I received your submission,
18  but I'll hear you on sentence.  Go ahead.
19             MR. MIEDEL:  Thank you, your Honor.  As you just
20  noted, I submitted a sentencing memorandum on April 22nd and
21  I know you've read that, so I don't have a whole lot to add to
22  it.  But your Honor, Raul Felix committed a financial crime for
23  obvious reasons, and yes --
24             THE COURT:  Well, he stole money from the government.
25             MR. MIEDEL:  Yes, he did.  He stole money from the

511fels

1    government.

2         THE COURT:  Okay.

3         MR. MIEDEL:  And as probably all financial crimes to
4    some degree or another, it can be described as greed, but it
5    can also be described as a very wrong, very misplaced attempt
6    at supporting himself and his family at a time when he could
7    not find steady work and when, for the reasons that I discussed
8    in my memorandum, he really didn't have the capacity to find
9    steady work and work that could support him.  That doesn't,
10   obviously, excuse in any way his conduct, but there are
11   circumstances surrounding the crime I think that are worth
12   considering.

13        The other thing to consider, your Honor --

14        THE COURT:  You know which count he pleaded to, right?
15   Two.

16        MR. MIEDEL:  Yes.

17        THE COURT:  Okay.  What does Count Two say?  It says
18   from November 2009 through June 2012.  You mean he couldn't
19   find any work at all in a period of over two years?

20        MR. MIEDEL:  As you know from the presentence report,
21   he has essentially not had any kind of work for a long time,
22   and finally -- and I'll get to this a little bit later, but
23   finally, you know, after suffering from a mental illness
24   essentially for quite a long time, he was ultimately diagnosed
25   in 2012 and started getting treatment, started getting both

1    medication and mental health treatment to address it, which

2    incidentally, and I don't think coincidentally, is also around

3    the time that he stopped committing this crime, because he in

4    fact stopped committing this crime in late spring of 2012 and

5    he wasn't arrested until spring of 2013, and I think it can be

6    at least partially attributed to the fact that he was finally

7    sort of starting to be in a better frame of mind.

8             So I think those are -- that is a context, your Honor,

9    I think you could consider.

10            I'd also like to point out that Mr. Felix engaged in a

11   scheme.  There were a lot of moving parts to the scheme.  He

12   was just one of those parts.  And so while he is obviously

13   responsible for the total loss amount of $429,000 and will be

14   responsible for paying back that amount, if he can --

15            THE COURT:  What do you think the chance of his paying

16   back 429,000 is?

17            MR. MIEDEL:  I think it's small, but it's going to be

18   something that is going to be hanging over his head --

19            THE COURT:  If he hits the lottery, maybe, but come

20   on.  He's not going to make 429,000.  You know it and I know

21   it.

22            MR. MIEDEL:  I agree, your Honor, but he's got the

23   rest of his life where he's going to have financial obligations

24   to deal with.  And, you know, the fact is that that number is a

25   far cry from what he actually netted from this scheme and which

1   makes, of course, the whole thing even more senseless than it
2   already is.
3          In addition, your Honor, I'd like to express concerns
4   about the concerns that I articulate in the letter as well
5   about his health.  As you know, he had a serious cancer scare a
6   few years ago.  He remains under observation every three to
7   four months, and that is obviously a very serious concern for
8   him in terms of, you know, worrying about recurrence and
9   worrying about getting the proper treatment if that happens and
10  also just having the preventative care that is required.  And
11  as we just discussed, he suffers from the depression, serious
12  depression that he suffered from for years and years before it
13  was diagnosed, and I think that the success of that treatment
14  since 2012 has borne fruit, and obviously we're concerned about
15  placing that in jeopardy.
16         Your Honor, Mr. Felix is here today with his family in
17  the audience, his wife and two teenage daughters.  He knows
18  that he has let them down tremendously, seriously let them
19  down, but his daughters are at a vulnerable age, they're
20  teenagers, and having a teenage daughter myself, I know what a
21  challenging time that is, and they need their father, your
22  Honor.  They need him around now rather than later.  So I urge
23  the court to consider these circumstances and to fashion a
24  sentence that is reasonable and is sufficient but not greater
25  than necessary, but which would allow him to remain with his

1    family.  Thank you.

2           THE COURT:  Does that include incarceration?

3           MR. MIEDEL:  Well, I would urge the court to consider
4    something like home confinement that would, you know, restrain
5    him and serve, you know, as punishment but would still allow
6    him to remain with his family.

7           THE COURT:  Mr. Aravind?

8           MR. ARAVIND:  Your Honor, we believe that a guidelines
9    sentence, an incarceratory sentence is appropriate in this
10   case.  It's true it's a financial crime, but it's a very
11   serious financial crime, and the amount of money at issue here,
12   $429,000, is not insignificant.  It's a large amount of money
13   and this defendant was someone that was taking identities,
14   trying to make these false tax returns.  This is, as the court
15   is aware, a huge issue, and it's individuals like Mr. Felix
16   that are very much at the center of this crime.  It's a serious
17   crime.

18          I understand that the defendant has health issues,
19   that he doesn't have a criminal conviction, he doesn't have a
20   criminal history, but in the government's view, a guidelines
21   sentence here is sufficient, it's necessary, for several
22   reasons.  First, as just punishment for this particular
23   offense, which is serious, and also really for deterrence
24   purposes, both specific, to prevent this defendant from
25   engaging in this type of activity in the future, as well as

511fels

1  general deterrence.  This is a huge problem, it's endemic, and
2  we need to have sentences that show to the community that this
3  type of behavior cannot be tolerated.  So based on that, your
4  Honor, the government believes a guidelines sentence is
5  appropriate.
6          I'm happy to answer any questions the court has.  I'm
7  also happy to hand up a Consent Preliminary Order of Forfeiture
8  and a money judgment, three copies.
9          THE COURT:  That I want, yes, please.
10         MR. ARAVIND:  That has been signed by defense counsel
11 as well.
12         THE COURT:  Thank you.  Let me just look at the order
13 here before I hear from the defendant himself.
14         (Pause)
15         THE COURT:  No one signed this on behalf of the
16 government, or at least the first copy.
17         MR. ARAVIND:  I will remedy that right now, your
18 Honor.
19         (Pause)
20         THE COURT:  Thank you.
21         Do you mind if I date where you signed it,
22 Mr. Aravind?  Because there's a space for a date and you didn't
23 put a date in.
24         MR. ARAVIND:  That would be fine, your Honor.  Thank
25 you.

511fels

1            THE COURT:  All right.

2            Please rise, Mr. Felix.  Is there anything you want to
3    say to me, sir?  If there is, you tell me anything you want.

4            THE DEFENDANT:  Yes, your Honor.  Thank you for
5    allowing me to speak, your Honor.  All I got to say is that I'm
6    very sorry for what I did.

7            THE COURT:  Now are you really sorry or are you sorry
8    you got caught?

9            THE DEFENDANT:  I'm very sorry for what I did.  I --
10   it was wrong, and I'm sorry that I put my family -- what I put
11   my family through, and if they could find it in their heart,
12   which I think they have, for -- I mean, for accepting my
13   apology.  And my family really needs me, I need them.  And I
14   will make -- and also I want to add, I will make every effort,
15   your Honor, to pay this money back.

16           THE COURT:  How are you going to do that?

17           THE DEFENDANT:  Your Honor, as soon as I can start
18   getting financial gains, when I'm working, you know, through
19   the course of my life, your Honor.

20           THE COURT:  Is there anything else you wanted to say,
21   sir?

22           THE DEFENDANT:  No, your Honor.

23           THE COURT:  All right.  Stay standing, please.

24           I've read the presentence report dated April 22, 2014,
25   and I've read the defense submission, which essentially seeks a

1 noncustodial sentence.  Also together with the submission from
2 the defense are submissions from Dr. Geller and also Dr. Shah,
3 S-H-A-H, and there's no question that in the past the defendant
4 did have cancer in his left forearm and needs care and
5 treatment concerning that condition.  He also suffers,
6 according to Dr. Shah, who is a psychiatrist, from major
7 depressive disorder, which is recurrent and severe with
8 psychotic features.
9         The defendant is a 42-year-old United States citizen.
10 And he pleaded guilty pursuant to a plea agreement, and he's
11 just agreed to forfeit $429,080.58.  The case involved a fairly
12 complicated scheme to fraudulently obtain tax returns through
13 Social Security numbers that were stolen.  He's recorded on
14 video, and that's covered in the presentence report and pointed
15 out in the presentence report, and as I said, this was a
16 complicated scheme.
17         The total offense level here is 19 with a criminal
18 history category of I.  That calls for a sentence range under
19 the Sentencing Guidelines of 30 to 37 months.  I know and I
20 recognize and I am bound by the fact that the guidelines are
21 advisory, they're not binding.
22         I've considered Title 18 of the United States Code
23 Section 3553(a) and its various factors.
24         I believe a sentence of two and a half years, which is
25 the bottom of the guidelines, is a little too severe.  I

511fels

believe, with the defendant's medical conditions and the fact that he has a family, that a sentence somewhat below the guidelines is appropriate. So I'm going to grant a slight variance.

It is adjudged that the defendant be committed to the custody of the Attorney General of the United States or his authorized representative for a period of two years, which is 24 months.

While incarcerated, the defendant is to receive the necessary MRI, which is magnetic resonance imaging, of his chest and a full physical examination, and he's also to be treated and receive medication, if that's appropriate, for his major depressive disorders.

At the expiration of the period of incarceration, the defendant is to serve a period of three years' supervised release under the mandatory and standard conditions of supervised release, plus I'm setting special conditions of supervised release which are:

That he's to participate in a program approved by probation and that program may include testing to determine whether he's reverted to using drugs or alcohol. I authorize the release of the available drug treatment evaluations and reports to the substance abuse treatment provider as approved by probation. I'm not requiring that the defendant contribute to the cost of such testing because of the other financial

1  penalties that he suffers and are going to be imposed.

2  The second specific condition is that the defendant
3  participate in a mental health program approved by probation,
4  and he's to continue to take any prescribed medication unless
5  otherwise instructed by the healthcare provider.  Again, I'm
6  not requiring that he make any payment concerning that.

7  Another special condition is he's to submit his
8  person, his residence, his place of business, his vehicle, or
9  any other premises under his control to search on the basis
10  that probation has a reasonable belief that contraband or
11  evidence of a violation of the conditions of release may be
12  found.  Any search is to be conducted at a reasonable time and
13  in a reasonable fashion.  Failure to submit to search may be
14  grounds for the revocation of supervised release.  And the
15  defendant is to inform any other residents that the premises
16  may be subject to search pursuant to this condition.

17  The defendant is to provide the probation officer with
18  access to any requested financial information, and he's not to
19  incur any new credit charges or open credit lines or open
20  additional lines of credit without the approval of probation.

21  A $100 special assessment is ordered, as is required
22  by law.

23  Restitution.  The total amount of $429,080.58 is
24  ordered, and that's payable to the Clerk of the United States
25  District Court for distribution and disbursement to the IRS.

511fels

1   The IRS office is Attention Mail Stop 3261, Restitution Unit,
2   at 333 West Pershing Avenue in Kansas City, Missouri.  The Zip
3   code is 64108.  Restitution is to be paid after he's released
4   from prison in monthly installments of 15 percent of his gross
5   monthly income over the period of supervised release, and those
6   payments are to begin 30 days after he's released.  If while
7   incarcerated he's engaged in a Bureau of Prisons nonUNICOR work
8   program, he's to pay $25 per quarter towards the criminal
9   financial penalties.  If he participates in the Bureau of
10  Prisons UNICOR program as a Grade 1 through 4, he's to pay
11  50 percent of his monthly UNICOR earnings towards the financial
12  penalties consistent with the Bureau of Prisons regulations at
13  28 C.F.R. Section 545.11.
14          When he's released, he's to notify the United States
15  Attorney of the Southern District within 30 days of any change
16  of his mailing address or residence address, while any portion
17  of the restitution remains unpaid.
18          I'm not fixing a fine because he doesn't have the
19  wherewithal to pay a fine.
20          I've signed the restitution orders, or copies of them.
21  I signed an original and two copies.
22          And I'll hear you on surrender, Mr. Miedel.
23          MR. MIEDEL:  Yes, your Honor.  I would ask that
24  Mr. Felix be allowed to surrender, self-surrender to a facility
25  designated by the Bureau of Prisons.  He has complied with all

511fels

1  conditions of pretrial release, he is recommended for
2  self-surrender by the probation department, and therefore, it
3  does not present a risk of flight.
4          THE COURT:  All right.  I think they need two months
5  to figure out where, so surrender is to be July 7.  I'll give
6  him right after the Fourth of July.
7          MR. MIEDEL:  July 7?
8          THE COURT:  July 7.  To whatever institution is
9  designated.
10         Now I want to make sure that when you get the
11 designation, you tell the authorities at that institution, one,
12 of this precancer or the cancer condition that he had and how
13 he needs testing relative to that, and two, about his
14 depression problem so that if he needs medication for that,
15 that he gets the appropriate medication, because I want to make
16 sure he receives that.  The need for the medication is going to
17 be in the judgment.
18         I'm going to recommend to the Bureau of Prisons that
19 he be institutionalized in the northeastern United States.
20 That way the family will get a chance to see him.  But the most
21 important thing concerning the conditions of his incarceration
22 are that he receives the medical attention that is required.
23         MR. MIEDEL:  Yes.  Thank you.
24         THE COURT:  All right.  That's the sentence.
25         There are open counts, I believe.

511fels

1      MR. ARAVIND:  Yes, your Honor, there are open counts,
2 which the government would move to dismiss.  If the court --
3      THE COURT:  And also, the open counts are ordered
4 dismissed.
5      Also, since it's a sentence under the Sentencing
6 Guidelines, I advise both sides of their rights to appeal.  The
7 defendant here has a very limited right to appeal, but it is a
8 sentence under the guidelines so therefore he has the right and
9 the government certainly has the right to appeal since I varied
10 from the guidelines.
11      MR. ARAVIND:  Your Honor, before we conclude, can I
12 just take a look at the order that I passed up.
13      (Pause)
14      MR. MIEDEL:  I was going to raise that, your Honor.
15 The order, the forfeiture order, restitution goes to the US
16 government as well, so in those instances I believe it's the
17 same thing.  It's the same --
18      THE COURT:  No, no, restitution and forfeiture are two
19 different things.  They can waive forfeiture, but I'm not
20 letting them waive restitution in this case.
21      MR. MIEDEL:  No, I understand.
22      MR. ARAVIND:  Judge, I just want to make clear for the
23 record that the order that we submitted is a Consent
24 Preliminary Order of Forfeiture.
25      THE COURT:  Yes.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

511fels

1       MR. ARAVIND:  But there should be a separate order of
2  restitution.
3       THE COURT:  Well, I've ordered the restitution.  If
4  you're going to submit a written order, fine.
5       MR. ARAVIND:  Okay.  Thank you, Judge.
6       THE COURT:  Okay.
7       MR. MIEDEL:  Thank you.
8       THE COURT:  Thank you.
9                               o0o